IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEIEL REESE, | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 7487 |
| v. | ) ) | Judge Virginia M. Kendall |
| LT. DELITZ et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deiel Reese brings suit under 42 U.S.C. § 1983 alleging that on April 23, 2020 he was a victim of excessive force while housed as a pretrial detainee of the Cook County Department of Corrections ("CCDOC"). (Dkt. 1). Reese alleges that on the orders of Defendant Lt. Damita Delitz, officers—including Defendant Officer Steven Hines—slammed a door into Reese's head, neck, and arm while he was passively resisting another detainee from being housed in his cell during the height of the COVID-19 pandemic. (*Id.*) Defendants now move for summary judgment, arguing that there was no use of force incident event on April 23, 2020, and that even if there was, the officers' actions were reasonable. (Dkt. 71). For the following reasons, Defendants' motion for summary judgment [71] is denied.

**BACKGROUND**

The Court assumes familiarity with the facts of this case from its prior rulings. (*See* Dkt. 67). On May 10, 2019, Deiel Reese entered the CCDOC as a pretrial detainee. (Dkt. 75 ¶ 7). At some point in April 2020, Reese was exposed to COVID-19. The parties dispute on which date Reese tested positive for COVID-19, (*see id.* at ¶ 20), but on April 19, 2020, Reese's medical records indicate that Dr. Wakas Ahmad told Reese he had tested positive and would be "move[d]

to [an] isolation tier," (Dkt. 72-13 at 32, 36; Dkt. 75 ¶ 21). Reese's recounting slightly differs: He testified he did not learn that he was positive until April 30, 2020, so on April 22, 2020 and April 23, 2020 he believed his housing reassignment was due to a COVID-19 exposure. (Dkt. 72-1 at 68:23–69:11, 92:13–20). Between April 20, 2020 and April 29, 2020, CCDOC assigned Reese to Division 8, Tier 3A, Cell 6, Bed 1. (Dkt. 75 ¶ 8). At the time of the alleged incident, he was in a single-man cell. (Dkt. 72-1 at 91:3–92:18).

Unhelpfully, the parties' statements of facts largely talk past each other. Reese alleges an April 23, 2020 incident that is the subject of this suit. Defendants' statement of facts details a similar April 22, 2020 incident—that Reese admits occurred—and argue that no incident occurred on April 23, 2020. To briefly recount that incident, on April 22, 2020 CCDOC reassigned Reese to a different cell. (Dkt. 75 ¶ 11). Reese refused orders from Lt. Delitz and Lt. Collin McCardle to transfer housing, as he was told the new cell was on a tier for people who tested positive for COVID-19. (*Id.* at ¶¶ 49, 51–52; Dkt. 72-4 at 42).[1] After Reese laid on the floor and refused to leave his cell, officers placed him onto an escort chair. (Dkt. 75 ¶¶ 62–65). Reese did not resist the officers and sat calmly in the escort chair. (*Id.* at ¶ 65). After several minutes, the officers released Reese from the chair and allowed him to remain in his cell. (*Id.* at ¶¶ 66–67). That same day, Reese submitted an inmate grievance form with the control number #2020X04401 regarding the April

---

[1] Reese objects to certain paragraphs of Defendants' Rule 56 Statement solely on the grounds that, he "disputes the relevance and materiality of this fact, and objects to said fact on the basis of relevance, as it pertains to the April 22, 2020 incident, which is not at issue in this action, rather than the April 23, 2020 incident which is at issue in this action." (Dkt. 75 ¶¶ 46–48, 52–67, 74–76). Defendants argue that this response is not in accordance with Local Rule 56.1(e), and as such, those facts should be admitted. (Dkt. 79 at 2–3). Reese's form of response "is unhelpful to the Court and not a proper way to respond under the Local Rules, which require squarely admitting or denying each proposed fact." *DRL Enters., Inc. v. N. Atl. Operating Co., Inc.*, 301 F. Supp. 3d 824, 829 n.5 (N.D. Ill. 2018); N.D. Ill. Local Rule 56.1(e)(2). Generally, relevance objections are better resolved at trial. *Schmucker v. Johnson Controls, Inc.*, 2019 WL 5579470, at *6 (N.D. Ind. Oct. 28, 2019). But because Reese does not provide alternative grounds for his objection, "[o]bjecting to materiality does not deny a fact," and "objections to facts based on relevancy are improper," the Court deems the facts in ¶¶ 46–48, 52–67, and 74–76 admitted. *Johnson v. Clark*, 2022 WL 971997, at *2 (N.D. Ill. Mar. 31, 2022) (citations omitted); *Griffith v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2007 WL 9816000, at *1 (N.D. Ill. May 31, 2007) ("Objecting based on relevance . . . is inappropriate and is not provided for in Local Rule 56."). In any event, irrelevant or immaterial facts do not create a genuine issue of material fact.

2

22, 2020 incident, in which he complained of a "slight strain in my back." (*Id.* at ¶ 13; Dkt. 72-4 at 42–43).

Moving to the subject of this suit, the events of April 23, 2020—in which Reese alleges excessive force in violation of the Fourth and Fourteenth Amendments—are almost entirely disputed. Reese's version of events relies on his deposition, statements in calls to his girlfriend Helen Henton, and written grievances.

Reese alleges that on April 23, 2020, Ahmad Sapp, another detainee, informed Lt. Delitz and Officer Hines that he was positive for COVID-19. (Dkt. 78 ¶¶ 3–4).[2] In an attempt to discourage Officer Hines and other officers from placing Sapp in his cell, Reese blocked the door by standing in the doorway. (*Id.* at ¶ 6). What happened next is entirely disputed by the parties and crucial to the determination of Reese's excessive force claim. Reese maintains that when he opposed Sapp's transfer into his cell, Defendants used excessive force on him while he passively resisted, resulting in injuries to his arm and neck. Reese filed an April 26, 2020 emergency inmate grievance form with control number #2020X04813, for this alleged April 23, 2020 incident. (Dkt. 78 ¶ 21; Dkt. 72-4 at 29–32). The April 26, 2020 grievance is consistent with Reese's allegations. Reese listed the accused as "Lt. Delitz c/o Taylor c/o Hines and four other male c/o's." (Dkt. 72-4 at 29). Reese wrote, "on the above date for the second day in a row Lt. Delitz has had c/os harass and physically cause me bodily harm." (*Id.*) Reese said that Sapp, who had tested positive for COVID-19, was forced into Reese's single man cell. (*Id.*) Though Reese had informed Lt. Delitz

---

[2] Defendants object to certain paragraphs of Reese's Local Rule 56.1(b)(3) Statement of Additional Material Facts and Supporting Exhibits on the grounds that it fails to comply with Local Rule 56. 1(d)(2) by citing to Reese's own Complaint as evidence. (Dkt. 78 ¶¶ 4–5, 7, 9–13, 20). This objection is overruled on ¶¶ 4–5, 7, and 9–13; in those paragraphs Reese provides a proper citation to the record, namely to the Defendants' own exhibit, Reese's deposition transcript. (*See* Dkt. 72-1; Dkt. 75 ¶¶ 4–5, 7, 9–13).

3

that moving Sapp into his cell would be a violation of social distancing regulations, Lt. Delitz told him that her orders came from the doctor. (*Id.* at 29–30).

Reese then "stood at the threshold of [the] cell door" to prevent Sapp from entering Reese's cell. (*Id.* at 30). The officers pushed Sapp from behind, forcing Sapp into the cell and knocking Reese to the side. (*Id.*) In his deposition, Reese testified that this push knocked him to the ground, where he implored the officers to stop. (Dkt. 72-1 at 60:18–23). Reese then laid on the ground and blocked the door with his body. (Dkt. 72–4 at 30). At this point, Reese heard Lt. Delitz say—which she disputes—"Push him back in the cell. Do whatever you got to do to get him back in that cell. Secure that door." (Dkt. 72–1 at 61:14–16). Reese wrote that the officers then "began to force the cell door against my head and neck with so much force my entire body was being pushed backwards . . . . [b]oth my head and right arm were caught in the cell door." (Dkt. 72-4 at 30–31). He stated that he was able to remove himself from the door, but not before injuring his hand and neck. (*Id.* at 31). His emergency grievance form listed Sapp as having information relating to the incident and requested the review of surveillance footage.[3] (*Id.*)

Directly after the April 23, 2020 incident, Reese informed Lt. Delitz, Officer Hines, and other officers that there was something wrong with his right arm, including that he could not move his arm or feel his fingers. (Dkt. 78 ¶ 11; *see* Dkt. 72-13 at 235).[4] Reese's medical records show

---

[3] On May 12, 2020, Sapp submitted a non-complaint inmate grievance form for an incident dated April 22, 2020. (Dkt. 72-26 at 3; Dkt. 75 ¶ 19). Sapp stated that on April 22, 2020, he was removed from his single cell to cell "3-A-6," which was occupied by Deiel Reese. (Dkt. 72-26 at 3). He "protested" the move as "dangerous," because Reese was infected with COVID-19. (*Id.*) Despite his protests, Sapp said he was "physically forced into this cell by 3 – c/os." (*Id.*)

[4] Defendants dispute this fact by stating, "Plaintiff did not request any medical attention for any injuries to his head, right hand, neck, on April 23, 2020, regarding an incident that allegedly occurred on that day." (Dkt. 78 ¶ 11). Per Local Rule 56.1(e)(3), parties "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local Rule 56.1(e)(3). Defendants' citation does not controvert Reese's fact, as it does not refer to April 23, 2020. (*See* Dkt. 72-15). Further, Defendants' citation to Dkt. 72-13 actually supports Reese's fact, as it states he did request medical attention. Thus, the Court admits ¶ 11.

that on the afternoon of April 23, 2020, a nursing progress note stated that they, "[m]ade two attempts to take v/s Ofc. sts pt refused to come out of cell for vitals." (Dkt. 72-13 at 233). Later that night, another nursing progress note stated, "A: Per tier officer [sic], detainee refused 1700 vital signs." (*Id.* at 234). Reese disputes that he denied treatment, and states he was not let out of his cell. (Dkt. 75 ¶ 24). The next morning, on April 24, 2024, another nursing progress note stated, "s Per patient 'i jam my hand in the door yesterday but the officer refused for me to see a nurse, both AM and PM officers.' " (Dkt. 72-13 at 235). The nurse noted that there was "slight swelling" on Reese's right hand, an "alteration in comfort," and gave Reese pain medication. (*Id.*) The nurse also called urgent care to speak with a doctor, who ordered an X-ray. (*Id.*) On April 25, 2020, Dr. Andrew Shabila reviewed Reese's right hand radiograph, finding "[n]o acute fracture, dislocation, or focal osseous abnormality of the hand or wrist bones." (*Id.* at 498).

On April 24, 2020, Reese called his girlfriend, Helen Henton, and described the April 23, 2020 incident to her. (Dkt. 78 ¶ 14; Dkt. 72-1 at 76:3–9). Through Henton, Reese contacted his lawyer and requested video of the incident. (Dkt. 78 ¶ 16). In all of Reese's conversations with Henton or his lawyer, Reese maintained that the April 23, 2020 incident was independent of the April 22, 2020 incident. (*Id.* at ¶ 17). On May 12, 2020, Reese filed a timely appeal of the denial of his April 26, 2020 grievance, which was later rejected. (Dkt. 78 ¶¶ 21–23; Dkt. 72-4 at 41). On October 20, 2020, Executive Director Kevin G. Connelly of the Cook County Sherriff's Office, Office of Professional Review ("OPR") issued a memorandum that noted on February 26, 2020,[5] Reese filed a grievance stating that he had been harassed and physically assaulted by staff. (Dkt. 75-2 at 2). Connelly wrote that he "preformed [sic] a record check within COMMS [sic] and was

---

[5] There was no grievance filed by Reese on February 26, 2020. The Court presumes, but cannot conclusively determine, that this was a clerical error by Connelly, who was intending to reference Reese's *April* 26, 2020, emergency inmate grievance form.

5

located under DIV08-2020-5611" and reviewed the April 22, 2020 video footage. (*Id.*) The memorandum then recounts the events of April 22, 2020. (*Id.*) Connelly concludes no infractions occurred based on the April 22, 2020 events and footage. (*Id.*) The memorandum does not mention the control number for Reese's April 26, 2020 grievance regarding the April 23, 2020 alleged incident or mention whether OPR looked into what happened on April 23, 2020 separately from April 22, 2020.

In contrast, Defendants categorically argue that there was no use of force incident occurring between Defendants and Reese on April 23, 2020. (*See* Dkt. 73). Reese filed his Complaint on December 16, 2020. (Dkt. 1). The Court held a spoliation hearing on June 29, 2023 regarding CCDOC's failure to retain the April 23, 2020 video footage. (Dkt. 66). At the hearing, the parties largely presented the same evidence as before the Court today. Following the hearing, the Court denied Reese's request to provide an adverse-inference instruction as to the destruction of the April 23, 2020 video and noted that "[t]he jury must decide whose version of events to believe based on the evidence presented." (Dkt. 67 at 5). Defendants now move for summary judgment. (Dkt. 71).

## LEGAL STANDARD

The Court should grant a summary judgment motion only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Whitfield v. Spiller*, 76 F.4th 698, 705 (7th Cir. 2023). To determine whether a genuine issue of material fact exists, the Court must view "all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *McCottrell v. White*, 933 F.3d 651, 657–58 (7th Cir. 2019) (quoting *Orton-Bell v Indiana*, 759 F.3d 768, 772–73 (7th Cir. 2014)). The Court does "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the

6

facts is most likely to be true." *White v. Woods*, 48 F.4th 853, 861 (7th Cir. 2022) (quoting *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021)). Rather, the Court has "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* If the movant meets their burden, then the nonmovant "must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Harris N.A, v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Though not an onerous burden, a "mere scintilla of evidence in support of the non-moving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Id.*

## DISCUSSION

### I. Excessive Force

The Court begins by setting Reese's claims within the proper constitutional framework. Reese brings his claims under 42 U.S.C. § 1983 for actions that occurred while he was housed as a pretrial detainee. (Dkt. 1). Reese's Complaint alleges that several CCDOC correctional officers "showed deliberate indifference and the use of unnecessary physical force," in violation of his Fourteenth and Fourth Amendment protections against the use of excessive force. (*Id.* at 7; Dkt. 74 at 2, 6).[6]

Pretrial detainees are protected against the use of excessive force under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 350–51 (7th Cir. 2018). To succeed on an excessive force claim brought by a pretrial detainee, the plaintiff must first prove that the defendant's use of force was done purposely or knowingly. *Kingsley*, 576 U.S. at 396–97. Once the defendant's intentionality is established, the plaintiff is then only required to "demonstrate that a reasonable person would

---

[6] The Complaint does not specify which constitutional rights Defendants allegedly violated. Reese, however, clarified in briefing that he alleges a violation of both his Fourth and Fourteenth Amendment rights. (Dkt. 74 at 2, 6).

7

recognize that the use of force was objectively unreasonable under the circumstances." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022) (citing *Kingsley*, 576 U.S. at 396–97).

Courts do not apply this standard "mechanically." *Kingsley*, 576 U.S. at 397; *Jump v. Vill. of Shorewood*, 42 F.4th 782, 793 (7th Cir. 2022). Instead, courts analyze the objective reasonableness of the defendant's actions by asking "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Lombardo v. City of St. Louis*, 594 U.S. 464, 466 (2021) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *Pittman ex rel. Hamilton v. Cnty. of Madison*, 970 F.3d 823, 827 (7th Cir. 2020). The court determines objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. Courts are also to "account for the 'legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.' " *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). Though not an exhaustive list, courts determining objective unreasonableness may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Lombardo*, 594 U.S. at 467 (quoting *Kingsley*, 576 U.S. at 397); *see also Ramos v. Rodriguez*, 2022 WL 279588, at *3 (N.D. Ill. Jan. 31, 2022). As courts must consider the totality of the circumstances, "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force

is often susceptible of different interpretations." *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020) (quoting *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010)).

From the jump, the parties' vastly disparate interpretations of the evidence caution against granting summary judgment in this use of force case. Throughout this litigation, Reese and Defendants disagree on the most basic of facts—the date of the alleged conduct from which this claim arises. Reese asserts that a use of force incident occurred on April 23, 2020 and that the events of that day, and that day alone, provide the basis for this litigation. (*See e.g.*, Dkt. 1 at 5; Dkt. 74 at 1–2). Reese admits that a separate incident also occurred on April 22, 2020, but maintains the events of that date are not part of this litigation. (*See* Dkt. 74 at 2–3). In contrast, Defendants assert that the incident between Reese and Defendants on April 22, 2020 constitutes the only use of force event between the parties, the events of April 22, 2020 comprise the facts of this litigation, and there was no separate incident between the parties on April 23, 2020. (*See* Dkt. 73 at 13–14).

The Court is well aware of the disconnect between the parties. This disagreement was central to the spoliation hearing heard before this Court in June 2023. (Dkt. 66). In that proceeding, the Court denied Reese's request for an adverse-inference jury instruction arising from the destruction of April 23, 2020 video footage because Reese failed to show that: (1) Defendants were aware of the CCDOC's Video Surveillance System retention policy; (2) even if Defendants were aware of the policy their failure would not necessarily cause the footage to be deleted; and (3) there was insufficient evidence to prove that Defendants acted in bad faith. (Dkt. 67 at 4–5). Nevertheless, the Court acknowledged that "Reese remains free to posit that the events of April 23 happened as he describes in his grievance and Complaint," and that the "Defendants, too, may present evidence to support their theory that nothing happened on April 23." (*Id.* at 5). Ultimately,

9

"it is a factual issue as to whether any incident occurred on the 23rd . . . . [and] [t]he jury must decide whose version of events to believe based on the evidence presented." (*Id.*)

The Court's fundamental observation remains unchanged. As such, the Court must refocus the parties. Defendants insist on concentrating on the April 22, 2020 incident to argue there is no genuine dispute of material fact as that date's events. Regardless of what occurred on April 22, 2020—which is not in dispute—it is clear that there are significant, unresolved factual disputes about whether there was a use of force incident on April 23, 2020. Adding difficulty, the record contains no video evidence of what happened on April 23, 2020. Rather, both parties support their version of events through testimony and documents.

Reese has been abundantly clear that this litigation relates to conduct that allegedly occurred on April 23, 2020, not the events of April 22, 2020. First, Reese filed separate grievance forms, one regarding an April 22, 2020 incident and another regarding an April 23, 2020 incident. Second, Reese contacted his girlfriend, Helen Henton, on April 24, 2020 and described the April 23, 2020 incident as separate from the events of April 22, 2020. Finally, in every conversation Reese had with his girlfriend, opposing counsel, his lawyers, and this Court regarding the April 23, 2020 incident, he described the events of that day as independent of the events of April 22, 2020. (*See, e.g.*, Dkt. 70 at 5, Dkt. 72-1 at 56:22–63:14, Dkt. 74 at 1–2).

Rather than confront this crucial divide, Defendants urge the Court to discount Reese's position and provide facts that only serve to cast doubt on Reese's theory of the case. Yet, in contrast to Defendants' belief, their evidence does not "directly contradict" Reese's evidence. (*See* Dkt. 79 at 5). For example, Defendants point to (1) Lt. Delitz's testimony, including that "[she] know[s] [Reese's April 23, 2020 grievance] did not happen," (Dkt. 72-18 at 84:13–18, 121:4–9); (2) a lack of CCDOC documentation supporting an April 23, 2020 incident, (*see* Dkt. 78-1; Dkt.

10

79 at 5); (3) the memorandum from Executive Director Connelly that purported to find no infractions occurring on April 22, 2020, (*see* Dkt. 72-25); and (4) Sapp's non-complaint inmate grievance form describing an April 22, 2020 incident as further foreclosing Reese's version of events, (*see* Dkt. 72-26).

None of this evidence is as conclusive as Defendants make it out to be. Rather, it further muddies the factual waters and would require the Court to improperly engage in fact and credibility determinations. For example, Connelly's memorandum makes no reference to the April 26, 2020 grievance, does not state a comprehensive review was conducted, and erroneously references a February 26, 2020 grievance filing date. Moreover, Sapp's grievance presents a third version of events, one that supports parts of both parties' accounts. True, Sapp's grievance notes the incident's date as April 22, 2020. But Sapp's recounting of the events more closely matches the version of events that Reese has presented. Thus, this evidence only serves to highlight the genuine issues of material fact that exist in this case.

Instead, Defendants belabor the Court with arguments that relate only to the events of April 22, 2020. These arguments are of little use to the Court in determining the present motion. Especially as the Court does "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *White*, 48 F.4th at 861. Thus, there are genuine dispute of material facts as to the date of and occurrence of the events in question that make the excessive force issue particularly inapposite to this Court's determination of summary judgment. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010); *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009); *Ramos*, 2022 WL 279588, at *3 ("Given the significant, unresolved factual disputes in this case, the court cannot conclude as a matter of law that the force used by any of the Defendants was objectively reasonable.").

11

Finally, Defendants argue that because Reese's only support is self-serving evidence "created by himself, including the phone calls he made to his girlfriend, his testimony, and the grievances he filed," there is no genuine issue of material fact. (Dkt. 79 at 4–5). Not so. It is true that Reese relies on testimony and documents that are self-serving, as "deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013). Though "most evidence can be called self-serving . . . a witness's self-interest does not prevent a trier of fact from crediting a statement based on personal knowledge." *Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020). Further "district courts may not discount a petitioner's declarations simply because they may be self-serving." *Sawyer v. United States*, 874 F.3d 276, 279 (7th Cir. 2017); *see also Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) (reasoning that summary judgment "is a singularly inappropriate time to resolve" a "he said, she said" dispute).

When viewing the evidence in the light most favorable to Reese, Defendants' arguments merely reflect how deeply the parties' facts conflict and how reliant the main allegations of this case are on credibility assessments. The Court cannot make such conclusive determinations. Given the significant factual disagreements between the parties, a jury will need to decide which version of events to credit. Defendants are free to argue that the events on April 23, 2020 did not occur. But a genuine issue of material fact remains as to what, if anything, happened on April 23, 2020, and for that reason the Court is unable to conclude as a matter of law whether Defendants used an "objectively reasonable" amount of force upon Reese. *See Kemp*, 27 F.4th at 496 (quoting *Kingsley*, 576 U.S. at 396–97).

12

## II.     Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. In § 1983 actions, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citation omitted). Yet, as the matter currently stands, the Court does not have undisputed facts upon which to determine whether the alleged use of force incident was objectively reasonable. *Smith v. Finkley*, 10 F.4th 725, 735 (7th Cir. 2021) (noting that qualified immunity must be determined on pure questions of law, not "mixed questions of law and facts").

All of Reese's presented facts are in dispute. He alleges that officers pushed him onto the floor, and as he passively laid in between the cell door, Lt. Delitz instructed the officers to close the door with all of their force. As a result, Reese's head, neck, and hand were caught and injured. It is clearly established that it is objectively unreasonable for officers to use "significant force" on subjects who are passively resisting. *See Abbott v. Sangamon Cty.*, 705 F.3d 706, 732 (7th Cir. 2015); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014). This prohibition applies even though the detainee may previously have refused to comply with officers' orders or even posed a threat to officer safety. *Miller*, 761 F.3d at 829. And while force may sometimes be appropriate to compel compliance with orders, "such force could not be exaggerated or excessive and should generally follow adequate warnings." *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (cleaned up).

As the parties dispute the incident itself, summary judgment on qualified immunity is inappropriate. *See McCray v. Sage*, 2022 WL 4465777, at *5 (N.D. Ill. Sept. 26, 2022). The Court cannot determine whether Reese was in fact passively resisting, or whether the officers' actions were objectively unreasonable. In other words, "[b]ecause the facts are in hot dispute, the officers

13

cannot seek pretrial refuge behind a claim of qualified immunity." *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (quoting *DuFour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998)). Reese's claim must proceed to trial. *See Williams v. Stauche*, 709 F. App'x 830, 836 (7th Cir. 2017).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [71] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: September 16, 2024